We will hear argument this morning in Case 2222, Goldman Sachs Group v. Arkansas Teacher Retirement System. Mr. Shanmugam? Thank you, Mr. Chief Justice, and may it please the Court. In this case, the Court of Appeals upheld the certification of a securities class action based on exceptionally generic and aspirational statements in the face of overwhelming and unrebutted evidence that the statements had no impact on the stock price. In so doing, the Court of Appeals committed two legal errors. First, the Court refused to consider the generality of the statements as evidence tending to disprove price impact. As respondents now agree, a court may consider the nature of a statement in making that determination. There is no merit to the further contention that a court may consider the nature of the statement only through expert testimony. Second, the Court of Appeals erred by holding that the basic presumption shifted the ultimate burden of persuasion to a defendant on the issue of price impact. Rule 301 governs presumptions, and it shifts only the burden of production unless a statute or rule provides otherwise. Basic plainly created a presumption, and Congress has not even recognized the private cause of action for securities fraud, much less provided that the basic presumption shifts the burden of persuasion. Should the court agree with us on either question presented, it should reverse the judgment below. The lower courts desperately need guidance on how to navigate this court's decisions on the basic presumption. While Halliburton II held out the promise that defendants would be able to rebut the presumption, that has proven to be effectively impossible, thanks in part to the inflation maintenance theory. And under the correct legal standard, this is an easy case, because the statements were exceedingly generic, the alleged conflicts of interest were already in the public domain, and respondents presented no valid evidence to establish the cause of the stock drops. If certification is permitted here, the promise of Halliburton II will have been betrayed, and any stock drop will inevitably result in a reverse-engineered securities class action based on statements like these. The Court of Appeals judgment should be reversed. I welcome the Court's questions. Mr. Shanmugam, you said that the respondents now agree with you that the generic nature of the statements can be considered, and you said that in discussing any possible difference, you focused on their argument that expert testimony is required. Is there any daylight on the substantive question between the two of you concerning the generic statements? I don't think so, Mr. Chief Justice, because respondent concedes at page 26 of their brief that a more general statement is relatively less likely to affect a securities price. And that is our fundamental submission on the first question presented. And to the extent that respondents suggest that an expert is required, we think first that that is contrary to this Court's direction in Halliburton II, that any evidence relevant to price impact should be considered, and second, we did have an expert, Dr. Starks, who elaborated on the relevance of the nature of the statements. So you think it's okay to submit expert testimony on that question if you want to, you just don't think it's required? That is correct, Mr. Chief Justice. We think that the nature of the statements is evidence that simply weighs in the preponderance of the evidence inquiry, and certainly plaintiffs like defendants are free to come forward with expert testimony on the question of price impact. So what is the debate between two parties on whether a statement is sufficiently generic? What does it look like? I mean, you have a statement of the sorts at issue here. I mean, does one side say, well, you can tell from common sense that this is too generic, and the other side says, no, my common sense says it's not? Well, Dr. Starks testified, Mr. Chief Justice, that generic statements such as these are pervasive in the market, they are made by all of Goldman Sachs' chief competitors, and that analysts did not view them as pertinent. Now, to be clear, we don't think that expert testimony of that sort is required, and again, where you have exceptionally generic statements like these, our fundamental submission is that plaintiffs have to make a more compelling showing that there was, in fact, price impact. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, I'm interested in how the basic presumption interacts with the inflation maintenance theory. Why should the basic presumption even apply if the cause of the alleged inflated price has never been identified? Justice Thomas, we don't dispute that the inflation maintenance theory can be a valid theory, but I think this case illustrates the difficulties in applying that theory, and I think the application here is seriously problematic. So just to be clear, the inflation maintenance theory is the notion that, even though a statement when made may not have had an impact on the stock price, it somehow maintains the price at an inflated level, and the way in which the parties litigate that issue is by looking at the so-called back end, at looking at the alleged corrective disclosures to see if any back end price drop is indicative of front end price inflation. But doesn't that lead you into the reverse engineering problem that you mentioned in your discussions with the Chief Justice? It does in a case like this, Justice Thomas, and let me explain why. I think if you have a case in which the inflation-causing event, the inflation-maintaining misstatement, and the alleged corrective disclosure all have the same content, the inflation maintenance theory just about works. And if you look at the Beatles hypothetical in the Court of Appeals opinion, at page 16A of the petition appendix, I think you see an example of that. But this case is a far cry from that, because the plaintiffs don't even deign to identify the inflation-causing event, and there is a mismatch between the alleged misstatements and the alleged corrective disclosures, precisely because the alleged misstatements are so exceedingly generic. Statements like, our clients' interests always come first, integrity and honesty are at the heart of our business, and so forth. And where you have that mismatch between the alleged misstatements and the alleged corrective disclosures, it casts doubt on the inference underlying the inflation maintenance theory, namely whether any back-end price drop is indicative of front-end price inflation. I know I descended in Amgen, but as I understand it, Amgen indicates or holds that the plaintiff is not required to prove materiality at the class certification stage in order to invoke BASIC. But does it preclude the defendant from disproving materiality? Well, I think what a defendant can do is point to evidence that would also be relevant to materiality at the class certification stage in order to negate price impact. And certainly the mere fact that a court at the motion-to-dismiss stage says that a case shouldn't be dismissed on materiality grounds doesn't mean that that element has been definitively resolved. Thank you. Justice Breyer? Good morning. There's an issue in a product liability case as to whether a tire was made properly and caused the accident. And it's tried to a judge, and there's some evidence introduced by experts, probably, and counter-experts, and the judge reviews that on appeal and listens to what the evidence in the record is and doesn't check his common sense at the door. Well, why isn't that just what's at issue here in your first issue? Everybody agrees. Take the statement for what it's worth. Listen to the experts and don't check your common sense at the door. That's what judges do. So why are we hearing that issue? Isn't that an issue for the Court of Appeals? And very rarely would we hear it. What's the legal issue? Justice Breyer, I certainly agree that our submission here is that a court shouldn't check its common sense at the door, and it should take the nature of the statement into account in the ways that I've suggested. It should weigh that evidence as part of the preponderance of the evidence inquiry, and it should consider the nature of the statements in determining whether those statements match up with the corrective disclosures. I think where the Court of Appeals went wrong was in lumping in that argument with our other arguments and saying that they were all precluded by Amgen. All Amgen holds is that a party cannot litigate the issue of materiality, that materiality is not the focus of the issue. But on the issue not of materiality, you're saying the precise mistake on this that the Court of Appeals made on the price impact theory in evaluating the evidence that was given is that it took the nature of the statements off the table. It said, and I'm quoting from page 20. It refused to consider the fact that they were general, even though the experts told them that the fact that it's general doesn't mean never. The fact that it's general means sometimes it can affect the price. And they didn't pay any attention to that, you're saying. I'll read the record and see, but I thought that's a job for the Court of Appeals. What have I said wrong? Well, the Court of Appeals not only took the nature of the statements off the table, but in assessing the evidence, it really attached no significance to the nature of the statements, and that was the district court's error as well. And so our view is that once that is corrected, this is an easy case because of the exceptionally generic nature of the statement. Okay, I got that point. Now, if I have time, I'd like to know the difference between materiality and price impact, which I put in my mind and get it for a while, and then I lose it. So what is it? I think I can answer that in a sentence because I know time is short. Materiality focuses on what a hypothetical, reasonable investor would care about. Price impact focuses on what actually happened. Okay, got it. Thank you. Justice Alito? Do you think there can never be a statement that is so bland that there can never be reliance? Suppose a company says, we are a nice company. Would you say that a court could not say that statement is so bland and innocuous that there cannot be reliance, or must the court say, well, that is one factor I will take into account, or I will take into account other factors? I think that's what courts do every day, Justice Alito, in evaluating materiality at the motion-to-dismiss stage, and as we point out in our briefs, there is a familiar and massive body of case law that says that statements of that variety are immaterial as a matter of law. I think that the argument that we're making here is overlapping and in some respects similar, but it is conceptually distinct. It is that when you have a statement like this, it is unlikely to affect the market price, and the fact that a statement is unlikely to affect the market price, as the government explains at some length in its brief, it tends to show that the statement did not affect the market price in actuality. Well, I understand that, but you now, disclaiming your brief, the argument that a statement in itself can be so bland and innocuous and uninformative that there can't be reliance, that's what I'm asking about. Do you really want to say that? Well, I think what we're saying, Justice Alito, is that the more generic a statement is, the less likely it is to have price impact, and of course, to be clear, we're specifically talking about price impact in the context of the basic presumption and not the separate question of whether, say, some individual individually relied. And again, I think on that issue, where you have exceedingly generic statements like this, and these statements are not too far removed from your hypothetical of a company that just says that it's a nice company, it is exceedingly unlikely that that's going to have price impact, and plaintiffs have to come forward with pretty compelling evidence that it does, and you certainly don't have that here. Very quickly on the Rule 301 issue. Am I right that all that is involved here is the ultimate assignment of the risk of non-persuasion? So none of this really matters. Assuming either side can produce whatever burden of production they have to bear, who's going to win if, in the mind of the judge, ultimately the evidence on reliance is in equipoise? That's all that's involved. Justice Alito, it is a preponderance of the evidence standard, and the allocation of the burden of persuasion will matter only in a case where there is sufficiently weighty evidence on both sides, and that's why we think that we would prevail here and that the Court should reverse regardless of the outcome on the second question presented. All right. Thank you. Justice Sotomayor? Counsel, basically what I think you're arguing is that a judge may rely on common sense and intuition in addressing whether a statement is generic so that it was unlikely to have a price impact. But how should a judge go about weighing her intuition against the opinion of experts? It seems to me, even with the hypothetical that Justice Alito posed, that what I would have done, and I think most judges would do, is to say, gee, my gut tells me, why would this even matter? Now I've got a bunch of petitioners, experts, who say, no, this is why it should. And unless I can articulate why those experts' position is unreasonable, why should my instinct win? And then why should, and does an appellate court have to say, if the judge says, no, I agree with the experts, does an appellate court then check its gut and decide whether it disagrees with the district court that the experts were convincing? I would say two things in response to that, Justice Sotomayor. First, and this goes directly to Respondent's suggestion, that the only way that the nature of the statements comes in is through experts. District courts all the time weigh expert testimony together with other evidence. And all we are asking the court to do is to say that that is the rule. In other words, that a court should take the nature of the statements into account together with the expert testimony. All right, counsel, may I stop you because time is limited? You pointed to two statements that suggest the Second Circuit didn't do that, and neither did the district court. But it seems to me that your arguments below all centered on a point that you've given up here. You argued below that generic statements cannot have in price impact as a matter of law. So read in context, I think that Second Circuit's two statements were responding to that. Justice Sotomayor, there were certainly points below where we made the more ambitious argument that the nature of the statements should be dispositive. But I think that there's no doubt that we also made the argument that the nature of the statements is relevant to the analysis in the way that we've been discussing today. And indeed, that was really the central focus of the first part of the oral argument before the Court of Appeals. And that is, of course, the argument that we made in our cert petition and the argument that we're making now. Then that's a matter for the record, counsel. Thank you. Justice Kagan? Mr. Chamatham, if I could continue on this question of exactly what the Second Circuit did wrong in your view. Is there any piece of evidence that the Second Circuit refused to consider that you think it should have? Any piece of expert evidence or anything else? Justice Kagan, we think that the nature of the statements is itself evidence. And that what the Court of Appeals suggested was that that has, in the Court of Appeals' own words, nothing to do with the issue of whether common questions predominate. That's the sentence, Mr. Chamatham, you're quoting on page 268, right? And I understand you also to be objecting to the statement on page 275. Are those the only two sentences essentially that you think the Court of Appeals got wrong or that lead you to think that the Court of Appeals was approaching it in the wrong way? I think that that's right, but I think it undersells it to say that it is only those two sentences because if, for instance, you take a look at the latter passage, the passage from 36A to 38A in the petition appendix, that's the passage in which the majority responds to Judge Sullivan's dissenting opinion, the whole gist of which was that the nature of the statements should be taken into account. And I think it's telling, Justice Kagan, that respondents in their brief in opposition, in response to our making this argument, did not in any way suggest that there was any ambiguity in the Court of Appeals' opinion. It was only after the government suggested that possibility in its amicus brief that respondents started making that argument. I guess this is similar to what Justice Sotomayor asked you, but in the context of an argument that you made below, which was that there were certain kinds of general statements that as a matter of law were irrelevant, I see those statements, at least possibly, as going to that argument that you made below rather than any argument that you're making now. I don't think that that is the better reading, Justice Kagan, and I do think that when you look at other statements that the Court of Appeals made, in discussing Amgen in particular, the Court of Appeals seemed to think that Amgen, almost as a penumbral matter, really precluded any consideration of the nature of the statement. And I think that that's fundamentally flawed, and I would point this Court to the Seventh Circuit's decision in Allstate, which I think engaged in the correct analysis in suggesting that notwithstanding the significant overlap between price impact, materiality, and loss causation, a court should not blinker itself. It should consider all of the relevant elements. Didn't the Second Circuit make it clear that it knew that in its first opinion in this case? Same panel, same case, and there the Second Circuit said clearly, look, you can consider at cost certification evidence that is relevant to materiality. I think so, Justice Kagan. I think where the Second Circuit went wrong is that despite that recognition of that general principle, the Second Circuit unambiguously, in our view, said that the nature of the statements could not be taken into account. And that exception to the general principle, I would respectfully submit, was erroneous as a matter of law. Thank you, Mr. Chamatham. Justice Gorsuch? Good morning. Can you explain how we could rule for you on the second QP, your Rule 301 argument, without running into the problems your friends on the other side say we'd have, and hopefully we'd have to effectively overrule Halliburton 2? I don't think so, Justice Gorsuch, and let me explain why. I think the obvious difference in what we're arguing from what the defendants were arguing in Halliburton 2 is that defendants would still bear the initial burden of production on price impact. I think in Halliburton 2, the Court concluded that if price impact were essentially a requirement that plaintiffs would have to establish, it would really neuter the fraud on the market presumption because it would make it impossible for the plaintiffs to have the benefit of the presumption. By contrast, our submission here is simply that this presumption works like any other presumption, and Rule 301 makes clear that as to presumptions, the burden of production shifts but not the burden of persuasion unless the presumption is provided for by federal statute or by rules. Okay, and on that score, I guess your friends on the other side would respond, it's a mistake to think about the basic presumption as a presumption at all. It's really more like a substantive rule or a proxy. What do you say to that? Justice Gorsuch, I don't know how this could be viewed as anything other than a presumption. Indeed, in Halliburton 1, the Court described it as, quote, just that, a presumption. And in basic, in establishing the presumption in the first place, the Court actually cited Rule 301, which I think reflects the recognition that this would be a presumption in the Rule 301 sense. And at that point, the only remaining question is whether the presumption is provided for by a federal rule or a federal statute, and where you have a cause of action that is judicially created, much less the absence of any suggestion by Congress that the basic presumption is a matter of statute and that the presumption shifts the burden of persuasion, we submit that Rule 301 applies by its terms. Thank you. Justice Kavanaugh? Thank you, Chief Justice. Good morning, Mr. Shanmugam. Following up with the Chief Justice's questions on the difference between you and the other side, and other of my colleagues have also asked about this, it seems like the adjectives are going to be different, and the adjectives will probably matter in future litigation, so I want to make sure I have crisply exactly what you think it should be. My understanding is that you think the generic nature of the alleged misstatement is powerful evidence of the lack of price impact. You also use critical or important. What's your preferred adjective, and do you really think the other side is agreeing with that? We'll find out soon, I guess. Good morning, Justice Kavanaugh. What I would say about that, and what we would respectfully submit that the Court should say, is that the more generic a statement, the less likely it is that it will contain the type of information that is incorporated into the market price of the stock. And we think that in this case, the statements are exceedingly generic, and where that is true, that is powerful or compelling evidence. And it is precisely for that reason that we think that the Court really should go on and address the certification here and reverse the judgment below. So can I just stop you there? If we conclude that it's generic but not exceedingly generic, you're drawing a distinction between those two things? Is that not powerful evidence? I think it's a sliding scale, Justice Kavanaugh. And so I think that where you have statements that are very generic, and it's hard to see a statement like, our clients' interests always come first as anything but, that is powerful and compelling evidence. Keep going. I think what's really striking in this case, and the reason why this case is an easy case, is because once you take that into account and look at what's on the other side, all you have on the other side is a single expert who really made no effort to attribute the stock drop to the alleged corrective disclosures, much less to disaggregate the effect of the reports of government enforcement activity. Can I ask you, since you're using generic, how are you defining generic or stated otherwise? What kinds of statements are not generic? I think that a generic statement is essentially a statement that has little specific, factual content, and I think that these statements really illustrate that. Statements like, our clients' interests always come first. It's hard with regard to many of these statements to even imagine a corrective disclosure, much less to think that the disclosures at issue here, which involve information that was already in the public domain, could qualify. Last question. In response to Justice Breyer, and I think Justice Kagan as well, I think you're saying that the Second Circuit's error was being misled by Amgen. Is that correct? I think that is correct, and the Second Circuit, I think, failed to navigate between Amgen and Halliburton II, and it dictates that all relevant evidence should be considered. Thank you. Justice Breyer? Good morning, Mr. Shanmugam. I want to see if I understand exactly what's at issue in this case, because it seems to me that the merit stage is pretty narrow. So you and the respondents both agree that the nature and content of the statements, here their generality, bears on the basic presumption, and the court ought to consider it, right? Yes, I think that's correct. Okay. So the only dispute between you is whether the judge can rely on common sense or expert testimony only. Am I correct about that? Well, I don't think it's fair to characterize our position as relying only on common sense. I think that everyone agrees with the proposition that the more generic a statement is, the less likely it is to affect a security's price. Okay, let me rephrase that, Mr. Shanmugam. Not only, it seems to me very unlikely that any defendant in a class action like this is not going to bring in experts on the question of how the generality of the statement might have affected the price, whether inflating it or causing it to spike or what have you. So the only dispute, then, is just the method of proof. I think in the defendant's case, it would most often be both and, like both expert evidence and common sense, but in the respondent's view, it should be only expert evidence and never common sense. Is that accurate? I think as a practical matter, Justice Barrett, that is, in the sense that typically both sides will have experts in any significant securities fraud case, and as I mentioned earlier, we did indeed have an expert who elaborated on this issue of the nature of the statements, pointed to other companies that had made them, and so forth. Okay, so you started your argument by saying that this case was an opportunity for us to restore the promise of Halliburton II by making the basic presumption rebuttable. Let's say that you lose on QP II. How does a ruling on that very, very narrow issue, saying, sure, judges can also consider their common sense, make the basic presumption rebuttable, what does it really accomplish? Well, Justice Barrett, I think that that's why, in our view, this Court should not simply vacate and remand to the Court of Appeals, but should proceed to apply the correct... Mr. Schoening, that wasn't a QP. You didn't ask us to do that, and that's a pretty fact-bound thing. Well, as you know, Justice Barrett, the Court obviously has the discretion to apply the legal standard once it articulates it, and our submission is simply that this is a really easy case for the reasons I've said. It's not just that these statements were generic. The alleged conflicts of interest were in the public domain, and respondents' expert testimony was painfully thin, and so I think it would provide much-needed guidance to the lower courts if this Court were to go on and apply the correct legal standard as it not infrequently does. Thank you. A minute to wrap up. Mr. Schoening again. Thank you, Mr. Chief Justice. So I would just say a couple of things about the government's position in this case, because you're about to hear from the government. We largely agree with the government. I think we part ways on just two key points. On the first question presented, we don't agree with the government that the Court should issue an open-ended remand so that the Court of Appeals can clarify the legal rule that it was applying. We believe, as I indicated in my colloquy with Justice Kagan, that the Court of Appeals unambiguously held that the generic nature of the statements could not be considered in the price-impact inquiry, and if this Court remands rather than reversing it outright, we would submit that it should do so with clear directions as to how to conduct the inquiry, as I indicated in my discussion with Justice Kavanaugh. On the second question presented, we respectfully submit that the government fails to come to grips with the language of Rule 301. The government offers no valid reason why it should not apply to the presumption that BASIC created, and in light of the Court of Appeals' legal errors on both questions and the need to provide guidance to the lower courts, this Court should not simply vacate or reverse the Court of Appeals' judgment. Thank you. Thank you, counsel. Mr. Joshi? Thank you, Mr. Chief Justice, and may it please the Court. The dispute on the first question presented has narrowed substantially. Petitioners no longer maintain that a generic statement categorically precludes a finding of price impact. It doesn't. And likewise, respondents no longer maintain that the generic nature of a statement is categorically irrelevant to price impact or otherwise contrary to Amgen, as the opinion below could be read to suggest. Rather, price impact requires comparing the actual price to what the price would have been had there been no deceit, and so the nature of the deceitful statement is relevant, though not by itself dispositive to that inquiry. As to the second question presented, Halliburton II said that plaintiffs have the burden to show the basic prerequisites but do not have the burden to directly show price impact. So if plaintiffs don't have that burden, then logically defendants should bear it. Now, petitioners rely on 301, but that rule's plain text leaves the burden of persuasion untouched, and so it doesn't answer the question here and doesn't displace Halliburton II. Going back to Justice Alito's, you know, we are a nice company. You say there's no categorical rule. Sometimes a statement might support the plaintiff's case and sometimes it won't. What does that argument look like? I mean, the issue is we are a nice company, and that's one of the challenge statements. What arguments are the parties going to make? So, Mr. Chief Justice, I guess I'll preface my answer by saying reliance is an element of the merits of a securities fraud claim, and so presumably it would be subject to the same sort of motion-to-dismiss standard that would apply to any securities fraud action. So I think in an extreme example like that, it might not survive a motion-to-dismiss, not just on materiality but on reliance as well. But to directly answer your question, at the class certification stage, the parties would offer evidence to answer the question that should always be answered in price impact. What was the price at the time of the plaintiff's transaction on the front end, and what would the price have been at that time absent the deceit? Okay, well, that's the general statement, the general rule, but exactly what arguments is someone going to make? Is that there are people who would regard We Are a Nice Company as a fraudulent statement depending upon subsequent events, and how would they make that case? Well, two things, Mr. Chief Justice. First, of course, they would have to establish falsity in the first case because that, too, is an element of a claim. And then second, it would probably look something like what Dr. Starks did here. I'm just theorizing, but it would be, look, similar statements like this never caused a price impact in similar industries or for similar companies. The price before and after would have been the same, and, therefore, there is no price impact in this particular case as a result of that false statement. Counsel, Justice Thomas? Thank you, Mr. Chief Justice. Counsel, would you give me an example of how an immaterial or a broad statement such as We Are a Nice Company and we like people, how that has an impact on price? So, Justice Thomas, it's difficult to give you an example of how a truly immaterial statement could in reality have actually had an impact on price precisely because the circumstances under which that would materialize would be a generally efficient market but reacting inefficiently in this particular case, which is just the converse of what the court said was possible in Halliburton II. And so because it would be an unreasonable reaction, I suppose any example I could give you might be deemed to be far-fetched. But I do think it is just a logical consequence of what this court already recognized in Halliburton II, which is even in a generally efficient market, a truly material statement could have no price impact and it follows that an immaterial statement might, in some circumstances, have a price impact. I think in this particular case, respondents and some of their amici suggest that in this particular case, because Goldman Sachs was dealing with a lot of financial instruments in which conflicts were extremely important, both to the company, to its reputation and reputational advantage that it enjoyed over its competitors and peers, and the industry more generally, that in this case even highly generic statements about conflicts did in fact have a price impact. Now we don't take a position on whether they're correct, but I imagine that's the sort of dispute that the courts below would resolve on a remand. Thank you. Justice Breyer? I just would like your view, if you can, because this is an area I don't know thoroughly. It's filled with, if not jargon, specialized terms. I think more than are necessary, but that's just an opinion. But let me go into this. All right. I thought this first question is just like saying is a tire defective or not, and you take the evidence for what it's worth. And apparently everybody agrees, take the evidence for what it's worth. Fine. Why isn't that the end of the case? Mr. Shalyan says, well, because they made a mistake in the court of appeals. Review that. When I read what they said, it seemed to me that what the judge was saying is, wait a minute, suppose what the guy had said at the company was ishkabibble, total nonsense. My God, how did that move prices? Why is that material? Well, 12b-6, denied. Okay, now we have to assume it's material. Now, every member of the class is using the word ishkabibble. So whether ishkabibble is or is not material was a matter for the judge to decide under the heading materiality. He may have made a mistake. You don't get an appeal until later. But the issue here is, are they all using the word ishkabibble? Yeah, they all are. And therefore, there's a common issue for the class. And I thought that's what the judge was talking about when he used the word ishkabibble. Correct me insofar as I'm wrong. Okay? Certainly, Justice Breyer. I think the statements that Mr. Shammigan points to and that we identify in our brief as well from the Court of Appeals appear to be more categorical than I think you've described them. Now, granted, you might say, well, they reside in particular sections of the opinion that are captioned in a way that might not be as categorical as they seem on paper. But if that's true, then we would just urge this court to clarify that so that there's no mistaking what the law is for parties and litigants and lower courts. As to how the generic nature of the statement might be used, I think as Mr. Shammigan said, all parties agree now that the more generic a statement, the less likely it is to have actually caused a price impact. And just like when a judge. Maybe. Maybe. But it depends on circumstances. And am I right in thinking that the real problem here is the defendants don't get an appeal from a 12B6 denial on basis of materiality. They do get an appeal. They do get an appeal when the court says this is going to be class action and they'd like that appeal so they don't have to settle. Now, that's what seems to me is underlying that. Am I wrong or right? I think you're probably correct as a descriptive matter, Justice Breyer, but I don't think it changes the fact. No, it doesn't. You're right. You're right. Amgen and Halliburton do said that, you know, price impact is to be evaluated at class certification and Congress and the rules committee have provided for the other. Justice Alito. Let me ask you a quick question about the basic presumption. Let's suppose you're right. So the plaintiff proves whatever the plaintiff has to prove under basic and the defendant under Halliburton too has the opportunity to introduce its evidence on this question. Then the judge has to decide. And the risk of non-persuasion is on the defendant, okay? What does the judge compare? The judge has the defendant's evidence. What does it have on the plaintiff's side? If this were a 301 presumption, I would say the judge has on the plaintiff's side whatever inference naturally arises from the evidence that the plaintiff has put in to satisfy basic. And the judge would have to decide how much weight to give that. Am I right? Is that what do you think that's what happens the way you see things? Or do you think that basic awards the plaintiff some quantum of proof that goes beyond the inference that naturally arises from what the plaintiff has proven? So, Justice Alito, I think Halliburton too described what the effect of plaintiffs having satisfied the basic prerequisites is doing is being actually satisfying the Rule 23 requirements. And the opinion says that twice in very short order, that the plaintiff actually satisfies a burden of persuasion. So I think it's probably, if I understood your question, closer to the latter. If I could give you an analogy, the basic prerequisites are sort of like the first half of a basketball game in which plaintiffs might take the lead and thereby, you know, satisfy their burden. Now for defendants in the second half, because they're behind, they can bring in evidence of price impact. My time is going to expire, and I'm not going to be able to get your full answer. I'll pick up with Mr. Goldstein. But I think you've got an interesting analogy there. But in order to decide that, I have to know by how much the one team is ahead at halftime in order to decide what has to happen in the second half. But my time is up. Thank you. Justice Sotomayor? Counsel, and I think you were trying to tease this out. You said the Second Circuit's opinion can be read to say that the generic nature of an alleged misstatement cannot be considered at all. But I don't take it to be your position to be that the Second Circuit decision can only be read that way? That's correct. Do you think it's the best reading of what it did? I don't know. But given that this court has the case before it, we think the most efficient path forward would be for this court to just make clear that the generic nature of the misstatement. Counsel, let's say I disagree with you that it's the most efficient way forward. Let's stop with the fact that they've been litigating the class certification now for five years, and that Petitioner's Counsel concedes the Second Circuit got it right the first time when it remanded. It said exactly what you want us to say the first time. It's hard to imagine they forgot it the second time. So wouldn't the most efficient answer be state the law and the best way to read the Second Circuit's opinion is the way it said the first time, and just let this issue die end and go on with the case? So, Justice Sotomayor, as long as this court states the correct view of the law, whether as an independent matter or whether by saying you choose to read the Second Circuit's opinion that way, the United States doesn't have a particular interest in that. We are most interested in a correct statement of the law. We don't have an interest in how this particular case comes out. So as long as this court correctly states the law, I don't think we have an issue with that, whether it's a vacatur or I think what Your Honor might be suggesting is an affirmance, but with a clarification of what the law is and what you believe the Second Circuit did. Thank you, Counsel. Justice Kagan? Mr. Joshi, on your Rule 301 argument, if I could better understand that, you might be saying one of two things. You might be saying that the basic rule and that all that comes from the basic rule is that the underlying, it has its source in a federal statute, and so that phrase of Rule 301, unless a federal statute provides otherwise, that phrase is satisfied. Or you might be saying, like, no, we don't have to satisfy that phrase. 301 is entirely irrelevant to this. So which argument do you make it? So with respect, Justice Kagan, I don't think it matters. The proviso in the first sentence of Rule 301 applies only to the assignment of the burden of production, but of course everyone agrees that the defendants bear the burden of production here. That proviso doesn't apply to the second sentence of 301, which I think is the critical one here. That sentence makes clear that the rule does not shift or otherwise assign the burden of persuasion, but remains on the party who had it originally. And critically, that text does not say remains on the party invoking the presumption. Had it said that, petitioners would have a strong argument. But it says on the party who had it originally, and so it's totally agnostic and recognizes that either party might have the burden of persuasion. So to figure that answer out, you have to go to the substantive law, which is Basic and Halliburton 2, and at that point, it doesn't really matter whether they're linked to a statute, an interpretation of a statute, or purely judge-made. The fact is Basic and Halliburton 2 set forth the substantive law, and that's all that matters. Thank you. Justice Gorsuch? Good morning, counsel. So, you know, at step one, Basic says that the plaintiff has a presumption that a misstatement made by the defendant affects market price. Step two, the defendant comes in and says, I have proof that it didn't in this case because it's so generic. You agree, I assume, that a judge could, in appropriate circumstances, find that that second production by the defendant does overcome the presumption that Basic provides. Yes. Okay. So the presumption isn't irrebuttable or irrefutable. It is rebuttable somehow. That's right. Okay. If that's the case, why wouldn't we follow 301 and put the burden of ultimate persuasion back on the plaintiff, given that, of course, it's class certification, and they bear the burden on class certification? So, Justice Gorsuch, I actually agree with you that plaintiffs bear the burden. Let's skip the analogies, okay? Sure. Let's just talk about, given that the law places a burden to see class certification on the plaintiff, and, of course, under 10b-5, the burden resides with the plaintiff to prove his case, why wouldn't the burden, in the face of a generic statement, come back to the plaintiff to say, okay, I have this evidence of a material misstatement, and you normally assume it to be contrary evidence, and now the plaintiff has to ultimately persuade the judge that, no, that generic statement, in fact, affected price. Because the plaintiffs have already satisfied that burden by showing the basic prerequisites. But, no, you just said that that was rebuttable. You said that could be overcome. So then you're saying it's not a presumption. It's an absolute rule. No, Justice Gorsuch, I apologize if I misspoke. What I'm saying is that the plaintiffs are capable of satisfying their burden by proving the prerequisites. Now, defendants can come back with price impact evidence, but given that plaintiffs have already satisfied their requirement by showing the basic prerequisites, defendants will have to do something more than equipoise on  I'm afraid my time's expired. Justice Kavanaugh. Thank you, Chief Justice. Good morning, Mr. Joshi. You agree in the brief that we should vacate and not affirm, correct? That's our suggestion. Right. Okay. And do you object to a formulation under which we would say what petitioner's brief said, which is the generic nature of an alleged misstatement is important evidence of the lack of price impact? Should we say that or not say that? I think that would be fine, but I think it would be better if the court could make clear that the reason the generic nature of a statement and the more generic a statement is evidence of price impact is because of the likelihood that it had a price impact. In other words, the more generic a statement, the less likely it actually had a price impact in the particular case. Okay. So the first sentence, the sentence I gave you, plus the more likely sentence that you have, you would suggest. Yes, that's right. Okay. Well, especially in March, I'm always game for a basketball analogy. So can you give the second half of your answer to Justice Alito's question? Certainly. My point was that by hypothesis, plaintiffs have already taken the lead on showing price impact through the indirect route of the basic prerequisites. And so if defendants want to rebut it with direct evidence of price impact, and plaintiffs will come forward with their own direct evidence relating to price impact, defendants will have to do more than just trade baskets in the second half. They'll have to do more than merely equipoise because for the whole game, plaintiffs would have had the lead, right? And so the idea is you don't need to know how much they're winning by, as Justice Alito suggested. All you need to know is that a tie in the second half is not enough to get a tie for the game. Thank you. Justice Barrett? Good morning, Mr. Joshi. I want to think about the implications of this case for other cases. So Judge Hamilton has a very thoughtful opinion in the Seventh Circuit in all states where he talks about how the tension between Amgen and Haliburton II requires the district court to split some very fine hairs. It's very, very difficult to navigate because, you know, all of these questions boil down to did the statement matter, even at the certification stage. All the while, as Judge Hamilton colorfully puts it, you know, the judge is supposed to be not thinking about the pink elephant, not thinking about how any of this bears, for example, on materiality. So here's my question. The nature and content of this statement and how general it is, do you think that is essentially a question of materiality? Not exactly, Justice Barrett. And I would add that we agree completely with Judge Hamilton's opinion in all states, and we think that's a good model to follow. But I think the generic nature of a statement, of course, would go to materiality in that the more generic a statement, the less reasonable it would be for a reasonable investor to rely on it. But it also goes to the entirely separate question of price impact, which is whether in this particular instance did the statement have an effect on the price of the security. You know, but as Justice Breyer said earlier, it's very difficult. You think about price impact and you think about this distinction, and I agree you can make a logical distinction between what actually happened in price impact and how a reasonable investor would react, which would be more the materiality question, but they're very close, right? I mean, if a statement is immaterial, it's far less likely that it will actually have an impact on the price, right? That's exactly right. And so if we say this, if we say, I mean, I understand both sides are conceding it, but if we say that the nature and content of a statement here, its general nature is relevant and fair game on the question of price impact, does that have implications for materiality down the road? I don't think so, other than the way that every fact that would be found might have some collateral estoppel effect down the line, but the court made clear in, I think, Amgen and Halliburton too, that just because a particular issue might bear on the merits, that's no reason not to allow the defendant or the plaintiff to bring that issue in at class certification, and of course Comcast and Walmart say the same thing. Thank you. A minute to wrap up. Mr. Joshi? Thank you, Mr. Chief Justice. The parties largely seem to agree with each other and with us on the first question presented, and the only lingering disagreement appears to be whether the generic nature of a misstatement must be introduced solely through expert evidence, and in our view, there's no sound reason to impose that kind of artificial limit. The more generic a statement is, the less likely it is to have had a price impact, and there's nothing wrong with the courts taking that likelihood into account as part of its calculus about which one of two competing narratives to credit, just like it would do with credibility or the Daubert factors. On the second question, Rule 301 doesn't answer the question because it says the burden remains on the party who had it originally, and to find that out, you have to look to substantive law, and to the extent Halliburton 2 doesn't already dictate an answer, this court shouldn't adopt one that would essentially work the radical alteration of basics that Halliburton 2 itself was loath to effectuate, and we think that's why every court of appeals to consider the question, including the Seventh Circuit in all states, has held that defendants bear the burden, and that's what we think this court should hold as well. Thank you, Counsel. Mr. Goldstein? Mr. Chief Justice, may it please the Court. On the substance of the first question presented, there is no difference between the parties and the United States. We agree with them that the generic nature of the statement, as they use the term, is relevant evidence to price impact. We do believe that that ought to be addressed in the first instance and principally by expert testimony, but judges can evaluate that testimony on the basis of common sense, and we can imagine cases, particularly where materiality hasn't been decided, where there is no expert testimony that's necessary. Now, how did we get to the point where everybody agrees? We got here because the petitioners have abandoned their argument in the court of appeals and in the cert petition that what the court should do is just evaluate materiality and determine as a per se matter that the statement is too generic to ever have price impact. What we do need to understand is that the court of appeals already applies the rule that everyone is asking for here, and the United States, I think, has properly moved to the point of saying, well, there is some ambiguity in parts of the Second Circuit's opinion, but you can resolve that just by making clear how you understand the court of appeals to rule. And so I want to focus on what actually is the rule in the Second Circuit. Now, you have to start with the Second Circuit's first decision in this case, which holds that all evidence is relevant to price impact, notwithstanding that it overlaps with materiality. Judge Crotty then receives an expert report from the petitioners on this exact question. Nobody excluded that evidence or tried to exclude it, and it was admitted, and Judge Crotty evaluated all of the evidence together. The petitioners did not argue on appeal and do not argue to you that the district court's assessment of the evidence on price impact was clearly erroneous, and so I do not understand how it is that they believe that they can get to the conclusion that you should remand to the Second Circuit in the hope that Judge Crotty's price impact determination will be overturned. Now, it is, I think, really important. Mr. Goldstein, I'd like to see what you disagree with. The petitioners say that under the court of appeals holding, and this is a quote from page five of their brief, plaintiffs need only identify a drop in a company's stock price following a negative event, then assert that the stock price had been improperly maintained by a company's generic statements without having to show when or how the inflation entered the company's stock price. Now, is that true? That is correct in the sense that it has nothing to do with disproving price impact. What the defendant does do is show, and the defendants attempted to do so here, that there was an alternative cause for the decrease in the price. The question of what caused the inflation in the first instance is a loss causation question, and this court held in Halliburton 1 and then reaffirmed in Amgen that that is not a question for class certification. There are plenty of ways of disproving price impact, and courts have found a lack of price impact. So only a drop in the company's price, and then you can rely entirely on a statement along Justice Alito's line that we are a nice company. No.  as a matter of law. The court will have to conclude. Okay, they're not that extreme. Something, you know, like we take conflicts seriously. We put the customers first. Are those different in substance? Absolutely. There is expert testimony here. There are analyst reports that identify why there was a premium in the Goldman Sachs stock price precisely because of this issue. But turn, Mr. Chief Justice, to what it is that the defendant here attempted to do to disprove price impact, and that is to prove an alternative cause for the decrease on that day. They just have a very hard price impact case to make out here. When the corrective disclosures occurred on this exact subject and the price declined precipitously on that day, it's no surprise that this is not a case that's going to have a lack of price impact. Justice Thomas? Chief Justice, I have no questions. Justice Breyer? Well, I'm not sure what you think, and maybe I'll rebuttal the others. I mean, this seems like an area that the more that I read about it, the less that we write, the better, based on very peripheral issues. And in this instance, you're so much in agreement. What do you think about our not answering the question? You're going to say, great, don't. But, I mean, I want to raise that question and throw it out. I would make the following judgment, Justice Breyer. If you agree with us that the Court of Appeals is doing the right thing, then you can dig the case or you can simply affirm on that basis. Judge Hamilton in the Allstate case does say, look, these are very, very, very fine distinctions. And it is, I think, important for the court not to do something that suggests that you want to reintroduce the materiality inquiry specifically in the class certification. And there is a view that if you can just continue to reiterate that. And so I do suppose there would be a valuable opinion that just says this. Look, don't on class certification ask the materiality question. On the other hand, don't throw common sense out and don't ignore the generic nature of the statements. Then say, that's the Second Circuit's rule. That's why it vacated the first class certification. That's why Judge Crotty received the Starks report. Judge Crotty evaluated the evidence and then Goldman abandoned the argument that that was clearly erroneous. That, I suppose, would advance the ball some or simply dismiss the case because all the Courts of Appeals already agree on the correct rule. Thank you. Justice Alito? Well, you just told us we should say don't reintroduce the materiality issue. Do you mean to say that we should provide the following instruction? In considering whether the basic presumption has been rebutted, you may not consider any evidence that would also go to the issue of materiality? No. Absolutely not. Should we say the opposite of that? That there is no reason to disregard evidence that goes to price impact that would rebut the basic presumption just because it would also go to the issue of materiality? Yes. That's the Second Circuit's first holding in this case, and we agree it was correct. Okay. Great. That's helpful. Now, could I ask you to respond to the question I asked Mr. Joshi? Do you want me to repeat it or do you remember what it was? I do remember it, and I remember the half of the basketball game. I'll do my best. Please correct me if I do it incorrectly. Here's what happens. When the plaintiff is establishing the basic presumption at class certification, that's a really important caveat here. At class certification, they show that the market is generally efficient and the statement was public. Remember, there is not that much evidence to show reliance then. What you are showing is that reliance is a common question. Because the plaintiff is improving materiality at class certification, it's not like that the plaintiff has done a ton to establish the actual fact of reliance. All they've shown is that this is a case that we ought to be litigating on a class-wide basis. What the defendant then tries to do, and Halliburton, too, allows them to do, is say, well, look, basic just has nothing to do with this case, because this is not a case where there was actual price movement in response to the statement. So it's an apples and oranges thing. It's not a rule 301 case where the plaintiff is introducing some evidence and that really does suggest the truth of reliance, and then the defendant is disproving reliance. That's helpful, but if I were the district judge, I would be somewhat baffled, because I don't know how to weigh the evidence that the defendant has introduced against something that is before me as a result of the plaintiff's having satisfied the basic requirement, unless I am commissioned to make my own evaluation of the strength of the natural inference of price impact that relies from whatever the plaintiff has shown. That's the problem to which I don't know the answer. I do, and you're exactly right, and what happens is that the plaintiff turns around and introduces rebuttal expert reports. This is how it works. There is the basic presumption at class certification, if you want to call it a presumption. It comes from the efficiency of the market and the publicity of the statement. The defendant comes along with something like the Starks report, the Troy report, that sort of thing. Then the plaintiffs introduce their own evidence. If it was just the plaintiffs standing on the efficiency of the market, it would be a mess and the defendants would probably win. That's never what happens. Thank you. Justice Sotomayor? Counsel, can we get to the specifics of this case with your answer? The other side at the beginning said that you had no expert testimony to rebut their expert's position that the generic nature of this evidence could not and did not affect the price. That's, I think, what your adversary said. Sorry, I apologize for interrupting. That made my head hurt. I just don't understand it. We have the rebuttal declaration of Dr. Finnerty, which we quote in our brief, that at length addresses the Starks report and goes through why the Starks is wrong and why it is that these statements are so important to the stock price. I would also point you to the evidence that is at JA 948 and 949 that goes through in detail analyst's responses to what happened here when the enforcement actions occurred and were discussed in press releases and there was going to be DOJ action talking about how it was that this premium was so important, how Goldman Stocks had lost value because it had a business model that often put its own interests in conflict with its own clients and so these systems that it claimed to have for resolving the conflicts were so important. We addressed this issue in terms, and you should realize and focus, I think, on the fact that they did not argue either to the Second Circuit or to you that Judge Coddy's analysis of this in his second attempt at this, which has been going on, as you said, Justice Sotomayor, for five years, was clearly erroneous. There is extensive evidence on our side. So, counsel, assuming that, tell me why the Second Circuit's decision has to be read in the way you say and is not ambiguous in the way the SG says. There are those two statements, so address those. So we have the first holding. Second, the way that the Second Circuit rejects Judge Sullivan on this issue is to say that Judge Coddy's decision is not clearly erroneous. They quote only a single sentence from the Second Circuit's opinion, which ought to be the first indication that they are not dealing with the actual holding. The sentence that they are talking about rejects Judge Sullivan's invocation of the materiality as a matter of law standard, which now the petitioners themselves abandon, and that sentence is followed by this. That is why materiality is irrelevant at the Rule 23 stage. Win or lose, that issue is common to all class members. That's all the Second Circuit is saying. We will account for the generic nature of the statement, but just don't ask the materiality legal question because Halliburton 2 reaffirms Amgen's holding that that is off limits. Thank you. Justice Kagan? Mr. Goldstein, you might be right about these statements. On the other hand, I suppose, as the SG says, it could be read the other way, and it's hard to find in the second opinion the correct statement of the law. You have to go back to the first opinion to find the correct statement of the law. So why shouldn't we just vacate and say, you know, here's what the law really is. We want you to make sure to do it under that appropriate standard? Justice Kagan, there's a good reason they don't say it that way. It's because the petitioners didn't make this argument. The petitioners did not argue to the Second Circuit that the generic nature of the statement as a common-sense matter ought to weigh in the balance. It is very hard to complain to the Second Circuit, and somewhat insulting to the Second Circuit, to reverse them on a ground that they don't have a clear articulation of why an argument is wrong that was not made to them, when the same argument was not made to the district court either. What they do do is respond to Judge Sullivan. Judge Sullivan invoked the materiality as a matter of law standard, and they say you shouldn't do that. The petitioners now agree with that. They do address Judge Sullivan's overall view. The evidence favored Goldman, including the generic nature of the statement. They say, okay, you know, maybe Judge Sullivan would come out that way if he was the district judge. But we have the clearly erroneous standard of review. That's not addressed in the cert petition or the merits brief. Everyone now agrees that the Second Circuit has the correct holding in the first decision. I acknowledge the literary criticism that they don't reiterate it in the second decision, but it's because they weren't asked to address that issue by the petitioners. And if I could change track a little bit. When you said we all agree on question one, and you said, including the fact that the common sense can come in outside of expert reports, I just am a little bit suspicious that you really all agree on everything. I mean, suppose there were expert reports on the question of, you know, how generic these statements are and whether they could have a price impact regardless. And the judge says, you know, I've been looking at these reports, and I've been getting eerie eyed, and there seem to be ambiguities. There seem to be gaps. And I'm going to fill that in with my gut intuition of what really matters to investors in the real world. Would that be appropriate? I don't think so. I think the more there is expert testimony, which I think will be very common, particularly after the court's decision in this case, the more the judge ought to be evaluating the experts. That's where I think common sense comes in, Your Honor. I think that if there are competing expert reports, the judge is not required to turn himself or herself into a computer, can assess those sorts of reports in the way that judges evaluate expert testimony overall. I just don't think that what we should have is judges saying, look, you know, I just know how economic markets work. Look to the amicus brief of the petitioner's expert economist who say, look, generally speaking, this is really, it requires a lot of experience, a lot of context. You want to know how important these issues are to these companies, how analysts have analyzed this issue, what had happened in similar circumstances. Thank you, Mr. Goldstein. Thank you. Justice Gorsuch. Good morning, Mr. Goldstein. You know, as I understand it, you know, the plaintiff bears the burden of proving that this is a class that needs to be certified. Then comes in a presumption as part of that, that a misstatement of fact affects price because of the efficient market theory. Fine. Then the defendant comes forward with direct evidence saying, well, in this case, this misstatement did not affect price. And the question then is what happens next? It seems to me one of two things could happen. One, the plaintiff could come forward with evidence, as you did here, trying to rebut that direct evidence and say, uh-uh, you're wrong, that here it did in fact affect price. And you may carry your burden of proof and win the day. The other alternative, though, is if we flip the burden and put it on the defendant here, the plaintiff might be able to do nothing and just rest on the presumption that there's a price impact in the face of direct evidence that there wasn't. And then the district judge is where Justice Alito worried about. He's weighing direct evidence of no price impact versus a theory, a presumption. And I'm not sure I understand how a district judge can do that. And isn't that some evidence that we should require, consistent with Rule 301, that the defendant carry his burden, as you say you did here, of showing that the direct evidence isn't to be credited and that the presumption should win out as a result? If I could just answer that, Justice Gorsuch, in kind of reverse order. I will remind you, of course, that Halliburton II expressly holds in charge. Put aside Halliburton II for a moment because I think we can argue that one all day long. And just focus, if you will, on the theory here. Here's how it will work, Justice Gorsuch, is that the plaintiffs will come forward with the evidence of the efficient market and publicity. And if the defendants come forward with expert testimony and other evidence that there was no price impact here, I think there's a decent chance they're just going to win. How does that work, though, if the plaintiff doesn't come forward with its own direct evidence? The plaintiff just rests on the theory. How is a district judge supposed to assess that? That's exactly what I was coming to. There will be cases where the defendant's evidence does not actually prove a complete lack of price impact on its case. I understand that. Put that aside, too, okay? It's still not quite getting to my question. The defendant comes forward with credible evidence that there's no direct impact. The plaintiff does nothing. How is a district judge supposed to analyze that? If there's a burden of proof on the plaintiff, I understand it. If it's on the defendant, I don't. Well, the defendant may have carried its burden of proof. Absolutely. How is a district judge supposed to – maybe I'll give you one more shot at it. A credible evidence of no direct impact against a theory. What's a district judge supposed to do? It may well – it absolutely can find that the defendant is prevailing. Thank you. Justice Kavanaugh? Thank you, Chief Justice. Good morning, Mr. Goldstein. To follow up on Justice Kagan's question on whether you really agree, do you agree that the generic nature of an alleged misstatement is important evidence of lack of price impact? Can we say it in those words? Depending on context. It frequently will be, but the United States correctly identifies context in which it won't be. For example, if the defendant says, you know, we put our clients first in the sense of having conflict of interest policies, that can be a sweeping statement and quite important. But I think that the court can very helpfully say the generic nature of the statement is relevant and in many cases may be quite important. And on the how we got here question that you started with, I think we're here in part maybe because of confusion in some of the lower courts about how to read Amgen and Halliburton 2 together. On the one hand, don't consider materiality. On the other hand, do consider evidence of lack of price impact. And the problem, as you know, is that the two inquiries overlap very significantly potentially. Can we say that the fact that the evidence on lack of price impact from generic statements overlaps with materiality does not matter? Yes. And you could quote the Second Circuit's decision in its first opinion in this case and affirm. And in its second opinion, though, in the case, the opinion that's actually before us, it seemed to me that the Second Circuit in rejecting the absolute argument that you characterized, petitioners having made there, that the Second Circuit went to the opposite absolute argument or at least, as the Solicitor General says, it could be read that way. Isn't the sounder course to make sure? You can make sure, as the United States has said, it's a real argument by just specifying it in your opinion. And to be clear, Justice Kavanaugh, both opinions are true. That could mean the wrong answer in this case. I don't understand how that's true, Justice Kavanaugh, with respect. Remember, both opinions are in front of you, not just one of them. And, again, the reason that the Second Circuit doesn't have clearer verbiage the second time around is that this argument wasn't made to it. All the parties agree. The Second Circuit has squarely held. And just take this point, Justice Kavanaugh. To remand, you must be willing to suggest that Judge Coddy clearly erred. How could he have clearly erred when he took an expert report on this question? What about when Judge Sullivan said in dissent that no reasonable investor would have attached any significance to the generic statements on which plaintiff's claims are based? Your response to that? The Second Circuit correctly held that that's the materiality standard. Now, the petitioners agree with that, too. That can be both, right? Didn't we just settle that, that it can be part of both? Right. The Second Circuit majority rejects that legal inquiry as to the factual conclusion at pages 36, 37, and 8. It just says there's no clear error here. Judge Coddy looked at the evidence and came reasonably to the opposite conclusion. And that's correct, too. They haven't preserved any clear error argument to the Court of Appeals or to you. Thank you. Justice Barrett? Good morning, Mr. Goldstein. So I think, you know, there's been a lot of discussion today about how much daylight there is between you and the petitioners on 2P1. And you say that it's the petitioners' fault, that they forfeited this argument, that it's different than what they did in the Second Circuit. But it seems to me that you've both moved towards the middle. I mean, they've backed off on how important they think generality is and whether it can be decided categorically. But you've also conceded that generality is relevant, and you've given on the common sense, on the role of the Court's common sense. So now we are left, you know, in this position where you've both moved more closely together, and now we have to decide what to do about the Second Circuit's opinion. Don't you think, Mr. Goldstein, that it might be helpful, given the positions that you've both taken, to make clear that language like this in the Second Circuit's opinion, where it says, whether alleged misstatements are too general to demonstrate price impact has nothing to do with the issue of whether common questions predominate over individual ones. So whether that's, you know, you called it, you know, maybe their literary effort needed to be polished a bit. I mean, no matter what the cause, don't you think it would be worth our while in clarifying what the standard is that you now both appear to agree on? So, to answer that question, sure, I don't have any problem with that. And the United States quite clearly says, well, in your opinion affirming, you can just say, we obviously don't need that to underrule the Second Circuit's first decision in this case. But Justice Farrick, the reason that it's important that we have moved is that we are not challenging the Second Circuit's rule. It's true. In our first appeal, we attempted to argue that evidence that would overlap with materiality is per se irrelevant to price impact. We've abandoned that argument. We're just embracing the Second Circuit's decision in this case. I would also just encourage you to read the paragraph before and the paragraph after. And those make it polluted that all that is happening here is that the Second Circuit majority is rejecting Judge Sullivan's invocation of the materiality as a matter of law standard that now the petitioners themselves have abandoned. What's happening is just what all states suggest, and that is that they are hermetically sealing off the legal test for materiality from the question of looking at the statements and their generic nature. All of that is perfectly fine. No one has a problem with it. And I joined Allstate, and I agree with it. But I guess to the extent that you suggest that it would be insulting to the Second Circuit for us to clarify that, I guess I don't understand that. It seems like it would be valuable. Do you think it would be an insult? No, no, no, no. Clarify it. Clarify it all that you will. We will all benefit from it. The question is whether you reverse their decision on the basis of an argument that was not made to them or to Judge Crotty. So vacating it would be okay with you? Vacating it with a clarified? No. You want it to affirm? I would like you to affirm, of course. But you can accomplish everything that you need to in simply saying we don't need that one sentence out of all of the rest of the Second Circuit's opinion and Judge Crotty's opinion and its first holding to completely reject the Court of Appeals' earlier conclusion in the case. Thank you. A minute to wrap up. Mr. Goldstein? Thank you, Mr. Chief Justice. I do want to make sure that we don't leave unanswered the petitioner's argument that these statements are just truly generic. At JA-29, we have this statement. We have extensive procedures and controls that are designed to identify and address conflicts of interest, including those designed to prevent improper sharing of information. And there's a similar one at JA-59. And then I would just encourage the Court to go to all of the statements in the press and reflecting analyst reports at JA-948 and 949 saying that this price drop is the result of the loss of the premium in Goldman Sachs' share price that resulted from their representations about their having methods to resolve conflicts of interest. The Second Circuit has always applied the correct rule here. All that's necessary is to issue an opinion in clarifying any ambiguity that you perceive and affirm. Thank you very much. Thank you, Counsel. Rebuttal, Mr. Shanmugam? Thank you, Mr. Chief Justice. On rebuttal, I want to explain why this case is more significant than Mr. Goldstein suggests and why the Court needs to answer the first question as well as the indisputably presented second one. Since Halliburton II, defendants have been able to rebut the basic presumption by showing no price impact in only five cases. Plaintiffs have used the inflation maintenance theory to make it very difficult to rebut that presumption because that theory prohibits a defendant from showing that a statement had no price impact at the time it was made. The Court of Appeals holdings on the two questions presented, taken together, take a defendant's burden from very difficult to effectively impossible. In an inflation maintenance case, the only way a defendant can rebut the presumption is by showing that a corrective disclosure had no impact on the stock price. But it is impossible to make that showing without taking the nature of the statements into account and comparing the statements to the corrective disclosures. And if a defendant bears the burden of persuasion, despite the plain language of Rule 301, plaintiffs will be able to do exactly what respondents did here, to obtain class certification by coming forward with an expert who identifies a stock drop but offers only a theory and no evidence about its cause. Mr. Goldstein argues as much today that a stock drop plus a generic statement is sufficient to support class certification. And in its second opinion, written by a different panel from the first opinion, the Second Circuit didn't simply make stray statements about the relevance of the nature of the statements. It did not engage in an analysis of the statements, how general they were, or how they line up with the alleged corrective disclosures. And neither did the district court. This court should bring this multi-year fight over class certification to an end, because in this case, it could not be clearer that there is a complete mismatch between the misstatements and the corrective disclosures, particularly once the abundant information already in the public domain is taken into account. And respondents' sole expert, Dr. Finnerty, offered nothing more than speculation about the cause of the price drop. This is an easy case because respondents presented abundant and unrebutted evidence of the absence of price impact. If this court permits the class certification to stand, or permits the Court of Appeals to reinstate it on remand, anything a company does that leads to a stock drop is securities fraud and gives rise to a valid class action. That is decidedly not the legal regime in any other jurisdiction of which we are aware, and it should not be the regime here either, particularly on a judicially created cause of action. The court should provide much-needed clarification. It should hold, first, that the nature of the statements is important evidence that should be taken into account in assessing price impact, and, second, that the basic presumption, like any other judicially created presumption, is governed by Rule 301. And the court should reverse the Court of Appeals judgment. Thank you. Thank you, counsel. The case is submitted.